193 So.2d 559 (1967)
Dennis DENDY
v.
CITY OF PASCAGOULA, Mississippi.
No. 44107.
Supreme Court of Mississippi.
January 3, 1967.
*561 Crawley & Ford, Kosciusko, Donald W. Cumbest, Pascagoula, for appellant.
Edmund A. Wilson, Pascagoula, Rae Bryant, Thomas L. Stennis, II, Gulfport, for appellee.
INZER, Justice.
Appellant, Dennis Dendy, sued appellee and cross-appellant, City of Pascagoula, in the Circuit Court of Jackson County, seeking to recover damages for personal injuries allegedly caused by the negligence of the City in maintaining a municipal beach pier. The declaration charged that Dendy was injured when he dived from the pier and that the City was negligent in maintaining its pier in a dangerous and defective condition. It alleged that the City had allowed the pier to be used for the purpose of diving for more than twenty years and that it permitted Dendy to dive from the pier knowing that at the time the depth of the water was only 15 to 18 inches. The declaration further charged that the City failed to provide adequate supervision, signs and safeguards for the safety of persons proposing to dive from the pier. It was also charged that the City had notice or was charged with notice of this dangerous and defective condition yet failed to take any action to protect the public, including Dendy, from such condition.
The City denied that it was guilty of any negligence causing or contributing to Dendy's injury. It affirmatively alleged that the negligence of Dendy was the sole proximate cause of his injury and that he assumed the risk when he dived into the water without knowing its depth. The jury found in favor of Dendy and awarded damages in the amount of $550,000. The trial court sustained a motion for a new trial and ordered a new trial on the question of damages only unless Dendy would enter a remittitur of $450,000. Dendy refused to enter the remittitur and appealed from the judgment ordering a new trial. The City cross-appealed.
Dendy assigns as error the action of the trial court in sustaining the motion for a new trial and ordering a new trial on the question of damages. The assignment of errors by the City may be summarized in four points. They are that the trial court erred (1) in refusing to grant its request for a peremptory instruction; (2) in failing to find that the verdict of the jury was against the overwhelming weight of the evidence; (3) in failing to hold that Dendy assumed the risk when he dived into the water without knowing its depth; and (4) in granting certain instructions on behalf *562 of Dendy and failing to sustain the City's objection to certain evidence.
Inasmuch as questions raised on cross-appeal concern the liability of the City, we deem it appropriate to first consider the cross-appeal. In passing upon the question of whether the City was entitled to a peremptory instruction we must look solely to the testimony on behalf of Dendy. Taking that testimony as true, along with all reasonable inferences which may be drawn therefrom favorable to Dendy, we are of the opinion that the trial court was correct in denying the motion for a peremptory instruction.
The jury was justified in finding from the evidence that the City had for many years maintained a municipal pier in connection with its city parks. This pier extended a distance of about 1320 feet into the Gulf of Mexico with an elevation of eight to fifteen feet above the water, depending on the state of the tide. The park and pier were maintained by the City in its proprietary capacity for purposes of recreation for its citizens and as a tourist attraction. On July 26, 1962, Dendy, together with two companions, all of whom were residents of Attala County, Mississippi, went to Pascagoula looking for employment. On the afternoon of July 28, 1962, they decided to go swimming in the Gulf and went to the pier. Neither Dendy nor his companions had ever been swimming in the Gulf and were not familiar with the conditions of the water. At the south end of the pier there are steps which go down from the walkway of the pier to a platform. Dendy and his companions went to the end of the pier and went down the steps to the platform. Dendy saw an open space between the banisters which appeared to be suitable for diving purposes. The water at that point appeared to be deep, so he dived into the water from the end of the platform. The water in fact was only about eighteen inches deep, and Dendy's head and body struck the sand underneath the water, breaking his neck and severing his spinal column. As a result of these injuries, Dendy is permanently paralyzed and is now and will always be totally disabled.
The jury was justified in finding from the evidence that in years past other people had dived from this pier and had received injuries such as those received by Dendy. The jury was also justified in finding that the City had notice or was charged with notice of this dangerous condition.
The City urges that Dendy failed to prove any negligence on its part in the maintenance of the pier. The evidence shows that the City did maintain three signs at the entrance of the pier. One sign stated "Use Pier on your Own Risk." Another read "Positively No Fishing or Crabbing." And the third sign read "No Bicycle Riding, No Whittling." The City also contends that it had in the past maintained signs on the pier warning that the water was shallow. However, the proof shows without question that there were no signs on the pier on the date of the accident warning Dendy or anyone else using the pier that the water was shallow or that it was dangerous to dive from the pier. The evidence was in conflict as to how long it had been since the City had maintained any signs or warnings of shallow water. We are of the opinion that the evidence presented made it a question for the jury to determine whether the signs which were actually present constituted sufficient warning under the circumstances, whether the City was guilty of negligence in failing to maintain proper signs, and whether the City was charged with notice that the signs which they had previously maintained were no longer there. The City was charged with the duty to exercise reasonable care to make this pier reasonably safe for people using it. The City had the duty to warn invitees using the pier of the known dangerous condition, and it was a question for the jury to determine from the evidence whether it had used reasonable care to do so. Byrnes v. City of Jackson, 140 Miss. 656, 105 So. 861, 42 A.L.R. 254 (1925).
*563 Dendy admitted that he saw the signs posted at the entrance to the pier, that he was a competent swimmer, that he knew it was dangerous to dive in shallow water, that there was no diving board at the place from which he dived, and that he dived into the water head first without making any investigation to determine the depth of the water. The City contends that inasmuch as Dendy made these admissions, he assumed the risk involved when he dived into the water.
The rule relative to the necessary elements of assumption of risk are set out in Elias v. New Laurel Radio Station, Inc., 245 Miss. 170, 179, 146 So.2d 558, 561-562 (1962), wherein we said:
The elements which must be found in order to constitute a defense of assumption of risk are generally stated in some such terms as follows: (1) Knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition.
Although Dendy did make the above admissions, the proof also shows that he was not familiar with the waters of the Gulf. Neither he nor his companions had ever been to the Gulf Coast prior to this occasion. He did not know it was possible for the water to be shallow 1320 feet out into the Gulf. He had no knowledge that the water was shallow. He was not charged with knowledge of a condition inconsistent with his safety when he dived into the water, and the circuit judge correctly held that Dendy did not assume the risk. However, we are of the opinion that this evidence does show that Dendy was guilty of negligence which contributed to his injury. Such contributory negligence is not a bar to recovery, but the jury should have diminished his damages in proportion to the amount that his negligence contributed to the whole negligence. Miss. Code Ann. § 1454 (1956).
We have carefully examined the assignment of errors by the City relative to the instructions and the admission of certain testimony, and we find no reversible error in this regard. When the instructions for the City and for Dendy are read together, they correctly instructed the jury on the issues of liability. We find no reversible error in the cross-appeal and affirm as to liability.
On direct appeal Dendy strenuously urges that the circuit court erred in sustaining the motion on behalf of the City for a new trial unless Dendy would consent to a remittitur of $450,000. It is pointed out that the trial judge did not state or specifically find that the verdict of the jury was so large that it evidenced bias, passion or prejudice on the part of the jury. It is contended that the trial judge merely substituted his judgment for that of the jury. The fact that the trial judge did not specifically state that the verdict of the jury was so large that it evidenced bias, passion or prejudice on the part of the jury does not necessarily mean that he did not reach that conclusion. The trial judge is presumed to know the law and he is presumed to have correctly applied it in passing on the motion for a new trial.
As a result of his injuries, Dendy is totally and permanently disabled. He is a quadriplegia. His condition is such that it will be necessary for him to be cared for by someone for the rest of his life. At the time of the injury he was 20 years of age, with a life expectancy of 50.1 years. He is a high school graduate and has worked as a truck driver earning $1.25 per hour. Since he has become 21 years of age, he has incurred medical expenses in the amount of $1,541.42 and will incur additional medical expenses in the future. He has *564 suffered physical and mental pain and will no doubt continue to suffer such pain.
The trial judge was well aware of these facts when he sustained the motion for a new trial. He was also aware that the jury had been instructed that if Dendy was guilty of contributory negligence, it should reduce the damages to the extent that his negligence contributed to the entire negligence, and that the jury evidently failed to respond to this instruction. The trial judge could have determined, as we do, that Dendy was guilty of contributory negligence, and that the verdict of the jury indicated that it failed to respond to this instruction, and such failure evidenced bias, passion and prejudice on its part.
We have consistently held in a long line of cases that this Court, in considering the action of the trial court in passing on a motion for a new trial will consider the action with favor and support it unless it is manifestly wrong. Especially is this true where a new trial has been granted, since the rights of the parties are not finally settled at this point. We will not disturb such action unless it is a manifest abuse of discretion. Capital Transport Co., Inc. v. Segrest, 254 Miss. 168, 181 So.2d 111 (1965); Rayner v. Lindsey, 243 Miss. 824, 138 So.2d 902 (1962); Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So. 645, 114 So.2d 667 (1959); Harper v. Miss. State Highway Commission, 216 Miss. 321, 62 So.2d 375 (1953); Smith v. Walsh, 63 Miss. 584 (1886).
We have carefully considered the serious nature and extent of the injuries involved here and the fact that the remittitur is large. But we cannot say the trial judge abused his discretion in granting a new trial. Inasmuch as Dendy was guilty of contributory negligence, we cannot say that a remittitur of $450,000 was excessive. Therefore, this case will be affirmed on direct appeal and remanded for a new trial on the question of damages unless the appellant shall, within fifteen days after final judgment in this Court enter a remittitur of $450,000. In the event the remittitur is entered, a judgment in favor of Dendy will be entered here for $100,000.
Affirmed on direct and cross-appeals, and remanded for a new trial on the question of damages only unless the specified remittitur is entered.
GILLESPIE, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.