ROY NOBLE LEE, Presiding Justice,
for the Court:
Curtis Bradley filed suit in the Circuit Court of- Bolivar County, Mississippi, against Emmitt Findley, d/b/a Findley Farms & Company, seeking damages for personal injuries. The jury returned a verdict in favor of Bradley in the amount of two hundred fifty thousand dollars ($250,-000), the full amount demanded in the complaint. The lower court sustained a motion for new trial and granted a second trial on all issues. That trial resulted in a verdict in favor of Bradley in the sum of one hundred fifty thousand dollars ($150,000).
The sole question on this appeal is whether or not the lower court abused its discretion in granting the second trial and whether or not the original verdict in the first trial of $250,000 should be reinstated.
*1182 There is little dispute in the facts of the case. Appellant was forty-nine (49) years old at the time of the accident, with a sixth grade education, and had been employed by appellee for approximately ten (10) years. His duties consisted of driving, hauling, loading and unloading soybeans in appel-lee’s farming operations. On October 18, 1982, the appellant drove a truck upon the scales at the Findley operation, walked to the rear of the truck, opened the tailgate, and the beans began to fall into the grain pit. A cloud of dust rose from the beans, and appellant stepped back into an uncovered manhole injuring the coccyx (tailbone) at the posterior tip of his spine.
The manhole into which appellant fell had been drilled through the concrete slab at the unloading pit to facilitate periodic maintenance of the scales. Charlie Hawkins, who drilled the hole, told appellee several times that a permanent cover was needed for it. Appellee Findley himself had fallen into the hole on one occasion prior to appellant’s accident, but the hole had never been satisfactorily covered. Appellant knew the manhole was located at the grain pit, and knew that it was uncovered, but on the occasion of the accident, he stepped back when the grain dust rose without thinking about the hole, and fell into it.
At the conclusion of appellant’s case, the parties stipulated that appellant had incurred fourteen hundred eight dollars ($1,408.00) in medical expenses; that over the two-year period prior to 1982, he averaged six thousand eight hundred seventy-three dollars ninety-two cents ($6,873.92) in income; that his life expectancy was 23.5 years with a present value of lost earning capacity in the amount of seventy-four thousand four hundred eighty-seven dollars ($74,487.00).
Appellant testified that when he sits directly on the tailbone, the pain is unbearable; that he can no longer drive a tractor or farm machinery, unless he is standing; that he has not consented to surgery but remains on medication prescribed by three physicians.
Medical testimony indicated that appellant fractured, with some dislocation, the posterior tip of his spine, the coccyx; that the tip of the bone was displaced and loose in the pelvic cavity, and when it is bounced or jarred, it may become extremely painful; that injections into the spine may offer some temporary relief and, as an alternative, the coccyx could be surgically removed; that any kind of sitting profession would be uncomfortable; that appellant had sustained a five percent (5%) physical disability, but, that, on account of his intellectual level, his mental limitations, and loss of his fine motor coordination, that appellant could not be expected to get a regular job, and would not be able to sustain gainful employment in the future.
In its order granting a new trial, the lower court said:
The verdict of the jury was grossly excessive to the extent that it evinced passion, bias and prejudice on the part of the jury so as to shock the conscience of the Court....
The plaintiff, Curtis Bradley, was guilty of contributory negligence and the verdict of the jury indicated that it failed to respond to the instruction of the court that the jury should reduce the damages to the extent that the plaintiff’s negligence contributed to the entire negligence apparent in the case.
On a motion to reconsider his granting of the new trial made prior to the second trial, the Court further explained its ruling:
I would have preferred, frankly, to have set it up where I could have granted a remittitur and let you decide whether to take that or not, but I couldn’t get beyond the fact that, to me, you had to have a consideration of the contributory negligence part in considering the damages.
This case took an unusual turn upon the granting of a new trial after the $250,-000 verdict. Since there were issues of negligence and contributory negligence for the jury to determine, the lower court was of the opinion that the verdict was exces *1183 sive and that a new trial could not be granted on the issue of damages alone. The lower court was in error as to the proper procedure to take. Since the trial judge was of the opinion that the verdict was excessive, he should have entered a remittitur and, if the remittitur was not accepted by the defendant Findley, the new trial should have been granted on the issue of damages alone. Of course, on that issue, the question of contributory negligence would have been litigated.
When the verdict of $150,000 was returned in the second trial, Findley paid the amount of that judgment, which was accepted by Bradley, without prejudice to his appealing on reinstatement of the verdict in the first trial.
When a lower court awards a new trial on excessive damages, it must appear that it manifestly erred and abused its discretion before this Court will reinstate the trial verdict. Hynum v. Smith, 447 So.2d 1288 (Miss.1984). In Dorris v. Carr, 330 So.2d 872, 874 (Miss.1976), the Court said:
When this Court reviews the action of the jury after the trial court has refused to grant a new trial on the question of damages, the question here then becomes one of whether the verdict was either so excessive or inadequate as to shock the conscience and to indicate bias, passion and prejudice on the part of the jury, or, as sometimes stated, whether the jury failed to respond to reason. But this is not the test this Court applies in passing upon the action of the trial judge when he grants a new trial. In such a case, the focus is upon the trial judge’s action and not upon the jury’s action, and we can only reverse the trial judge in such event where this Court finds that it is manifest that the trial judge abused his discretion.
See also Walton v. Scott, 365 So.2d 630 (Miss.1978).
In Dendy v. City of Pascagoula, 193 So.2d 559, 564 (Miss.1967), the Court said:
The trial judge was well aware of these facts when he sustained the motion for a new trial. He was also aware that the jury had been instructed that if Den-dy was guilty of contributory negligence, it should reduce the damages to the extent that his negligence contributed to the entire negligence, and that the jury evidently failed to respond to this instruction. The trial judge could have determined, as we do, that Dendy was guilty of contributory negligence, and that the verdict of the jury indicated that it failed to respond to this instruction, and such failure evidenced bias, passion and prejudice on its part.
We have consistently held in a long line of cases that this Court, in considering the action of the trial court in passing on a motion for a new trial, will consider the action with favor and support it unless it is manifestly wrong. Especially is this true where a new trial has been granted, since the rights of the parties are not finally settled at this point. We will not disturb such action unless it is a manifest abuse of discretion. [Citations omitted].
Under all the facts and circumstances of this case we cannot say that the lower court was manifestly wrong and abused its discretion in granting a new trial, even though the trial was not limited to damages.[1]
The lower court overruled motions of the plaintiff to amend the ad damnum clause of the complaint. Through the years this Court has consistently held that amendments are to be allowed liberally. Rule 15, Miss.R.Civ.P., restates that policy. The appellant should have been permitted to amend tne ad damnum clause of his complaint to increase the amount of his demand, both at the conclusion of his case on the first trial and before the beginning of the second trial. However, those are not questions which enter into the determination of whether or not the verdict in the first trial should be reinstated.
*1184 The judgment of the lower court is affirmed.
AFFIRMED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, J., not participating.

. Absent this limitation, the jury was not prevented from finding for the plaintiff.